# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERMAN DOUGLAS and CYNTHIA R. DOUGLAS,<br><br>　　　　Plaintiffs<br><br>　　v.<br><br>DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA; THE CHARTER OAK FIRE INSURANCE COMPANY; ST. PAUL TRAVELERS COMPANIES, INC.; THE ST. PAUL TRAVELERS COMPANIES, INC.; THE TRAVELERS COMPANIES, INC.; STANDARD FIRE INSURANCE COMPANY OF CONNECTICUT; TRAVELERS INSURANCE GROUP HOLDINGS, INC.; TRAVELERS PROPERTY CASUALTY CORP.; and THE PHOENIX INSURANCE COMPANY,<br><br>　　　　Defendants | No. 3:08cv1607<br><br>(Judge Munley) |

## **MEMORANDUM**

Before the court for disposition are the parties' cross-motions for summary judgment. (Docs. 55, 58). Having been briefed, the motions are ripe for disposition.

## **BACKGROUND**

Plaintiff Herman Douglas was injured in a car accident on August 21, 2005. (Joint Stip. of Facts ¶ 1 (Doc. 55-1)).[1] Herman Douglas settled a

---

[1] The Joint Stipulation of Facts for Herman Douglas is not signed by counsel for the defendants. (Doc. 55-1 at 2). The court considers the

claim with the third-party tortfeasor and seeks underinsured motorist ("UIM") benefits from Defendant Discover Property & Casualty Insurance, Co. ("Discover"). (Id. ¶ 2). At the time of the accident, Abbott Laboratories ("Abbott") maintained an automobile insurance policy with Discover. (Id. ¶¶ 4, 5). Herman Douglas was driving a car provided to him by Abbott at the time of the accident. (Id. ¶ 6). The car was principally garaged in Pennsylvania at the time of the accident. (Id. ¶ 8).

Beyond the facts stipulated, the defendants state that the policy was "delivered" to Abbott in the state of Illinois. (Defs.' Counterstatement of Material Facts ("CSMF") ¶ 10 (Doc. 63)). The defendants also state that Abbott intended to waive UIM benefits in every jurisdiction permitted, including Pennsylvania. (Id. ¶ 11). The policy was a commercial fleet policy. (Id. ¶ 12). The policy contained a self-funded retention. (Id. ¶ 13).

The plaintiffs filed a declaratory judgment action in the Court of Common Pleas of Luzerne County, Pennsylvania on August 5, 2008. (Compl. (Doc. 1 at 9-28)). Count I of the complaint seeks a declaratory judgment, essentially that the policy's waiver of UIM protection is void under 75 PA. CONS. STAT. ANN. § 1731(c.1), part of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). (Id.) Count II of the complaint raises a claim for bad faith under 42 PA. CONS. STAT. ANN. § 8371. (Id.) Count III of the complaint seeks the appointment of a special master to adjudicate the claims of the members of a potential class action. (Id.) The defendants filed a notice of removal on August 27, 2008. (Notice of Removal (Doc. 1)).

On September 2, 2008 the defendants filed a motion to dismiss the

---

stipulation valid, however, because the defendants cite to the stipulation in their own counterstatement of material facts. (See Doc. 63).

2

complaint. (Doc. 3). The motion to dismiss was denied on September 22, 2009. (Doc. 23).

The plaintiffs filed a motion to remand to state court on September 4, 2008. (Doc. 5). On September 17, 2008 the plaintiffs also filed a motion to limit the defendants' contact with putative class members. (Doc. 11). The plaintiffs' motions were denied on November 24, 2008. (Doc. 18).

The defendants answered the complaint on October 16, 2009 and the parties engaged in discovery. (Doc. 23). On July 9, 2010 the plaintiffs filed an unopposed motion to sever the claims of Plaintiffs Leroy and Anna Webb from those of Plaintiffs Herman and Cynthia Douglas. (Doc. 39). That motion was denied on August 4, 2010. (Doc. 42). On November 12, 2010, the plaintiffs moved for voluntary dismissal of Plaintiffs Leroy and Anna Webb, which the court granted on November 15, 2010. (Docs. 53, 54).

On December 27 and 29, 2010, the remaining plaintiffs and defendants filed their respective cross-motions for summary judgment. (Docs. 55, 58). The motions have been briefed, bringing the case to its present posture.

**JURISDICTION**

The plaintiffs are citizens of Pennsylvania and the various defendants are incorporated and have their principal places of business in Illinois, Minnesota, Connecticut, and Delaware. (Notice of Removal ¶ 5). The amount in controversy exceeds $75,000.00. (Id. ¶ 9). Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, the court has removal jurisdiction over the case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . .

3

. citizens of different states[.]"); 28 U.S.C. § 1441 (A defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).

As a federal court sitting in diversity, we must apply state law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). In this case, the relevant state is Pennsylvania. If the state supreme court has not yet addressed an issue before us, we must predict how that court would rule if presented with that issue. Nationwide v. Mutual Ins. Co., 230 F.3d 634, 637 (3d Cir. 2000). In so doing, we must examine the opinions of the lower state courts, and we cannot disregard them unless we are convinced by other persuasive data that the highest court would rule otherwise. Id.

**LEGAL STANDARD**

Before the court are the parties' motions for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949

(3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

The parties have filed cross-motions for summary judgment on largely stipulated facts. We will address the competing motions jointly.

**A. Necessity and Sufficiency of § 1731 Waiver**

The parties dispute several issues regarding section 1731 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). "The MVFRL requires insurers to offer underinsured motorist and uninsured motorist ("UM") coverage that compensates individuals for damages sustained in accidents with uninsured or underinsured vehicles. Purchase of UM and UIM coverage is optional, although to refuse such coverage, an insured must sign rejection forms whose precise language is dictated by statute[.]" Jackson v. Allstate Ins. Co., 441 F. Supp. 2d 728, 732-33 (E.D. Pa. 2006). Subsection 1731(a) is the mandatory offering provision of the MVFRL, which states:

> No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 PA. CONS. STAT. ANN. § 1731(a).

UIM coverage, and its disclaimer, is dictated by subsection 1731(c) of the MVFRL, which provides:

> Underinsured motorist coverage.--Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
>
> REJECTION OF UNDERINSURED MOTORIST PROTECTION
>
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. <u>Underinsured coverage</u> protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
> ....................................
> Signature of First Named Insured
>
> ....................................
> Date

Id. § 1731(c) (emphasis added).

6

Subsection 1731(c.1) requires strict compliance with subsection (c):

> Form of Waiver.--Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. <u>Any rejection form that does not specifically comply with this section is void</u>.

Id. § 1731(c.1) (emphasis added).

The parties agree that Discover's form deviates from the statutory language quoted above. It states:

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. <u>Underinsured Motorists</u> protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

(Abbott Laboratories Pennsylvania Underinsured Motorists Coverage Selection/Rejection Form (Doc. 55-1 at 48) (emphasis added)). Thus, Discover's form refers to "Underinsured Motorists," while the statutory rejection language in subsection 1731(c) refers only to "Underinsured Coverage."

The defendants make several arguments in favor of their motion for summary judgment on the plaintiffs claims as to section 1731. We will address each argument in order.

### 1. Whether § 1731 Applies to Commercial Fleets

The defendants' most broad argument is that section 1731 is a consumer protection provision of the Pennsylvania Code, and that it is not applicable to commercial fleet policies, such as Abbott's. The defendants analogize to the decision of the Supreme Court of Pennsylvania in Everhart

7

v. PMA Ins. Group, 938 A.2d 301 (Pa. 2007).  There, the Supreme Court of Pennsylvania held that section 1738 of the MVFRL, which requires stacking of UM/UIM benefits absent a valid waiver, was not applicable to commercial fleet policies.  Id. at 302, 307.  The majority, finding that the statute was not unambiguous as to whether stacking was mandated in commercial fleet policies, sought to ascertain the legislative intent behind section 1738.  The court found that mandating stacking on commercial fleet policies would raise insurance premiums, undercutting the MVFRL's purpose of lowering insurance costs.  Id. at 306.  The court also found that mandating stacking "would be inconsistent with the reasonable intent of the contracting parties" and would ignore the fact that under common law stacking of UIM coverage did not apply to commercial fleet policies.  Id. at 306-07.

The defendants argue that subsection 1731(c), at issue here, is also ambiguous because it refers to "households" and uses personal pronouns like "I," "my," and "myself"– terms not typically used in reference to corporations.  Finding such an ambiguity, the defendants seek to determine the legislative intent behind the subsection.  They note that there is no disparity of bargaining power between large corporations, such as Abbott, and insurance companies, like Discover.  Thus, there is no risk of a contract of adhesion– the concern that animates section 1731 with respect to individual consumers.  The defendants add that section 1731 does not specifically refer to corporations, as such.

The plaintiffs respond that issue of stacking UM and UIM benefits, analyzed in Everhart, is logically distinguishable from this case involving only UIM benefits.  In the commercial fleet context, a rule that UM and UIM benefits will be stacked absent a valid waiver would potentially multiply the

benefit limits by the hundreds or thousands of vehicles insured under the commercial fleet policy– an absurd result.  No absurdity results from requiring a valid UIM waiver for a commercial fleet policy– a driver simply receives UIM benefits in the event that a waiver does not comply with subsection 1731(c).  Furthermore, the plaintiffs argue, there was no preexisting rule at common law rendering UIM benefits inapplicable in the commerical fleet context, as there had been with stacking of UIM benefits in the commercial fleet context.

Finally, the plaintiffs point to a decision of the United States Court of Appeals for the Third Circuit, Travelers Indemnity Co. of Illinois v. DiBartolo, 171 F.3d 168, 169 (3d Cir. 1999), in which that court predicted that the Supreme Court of Pennsylvania would hold that a corporation can waive UM coverage just as an individual can.  The plaintiff in that case, DiBartolo, had argued that because the plain language of subsection 1731(b)– like 1731(c)– refers to "I," "myself," and "relatives residing in my household," the legislature could not have intended for corporations to have the ability to waive UM coverage without the consent of the employee.  Id. at 170.  The Third Circuit agreed with the trial court that "the linguistic style of the rejection form, designed for easy comprehension, does not evidence a legislative intent to prohibit corporations or other legal entities from executing a waiver."  Id. (internal quotations omitted) (citing 1 PA. CONS. STAT. § 1902).  The corporate employer in that case had used the statutorily required waiver language, therefore DiBartolo was precluded from receiving UM benefits.  Id. at 172.[2]  The plaintiffs here argue, simply,

---

[2] The court noted that had Travelers used language other than that prescribed in subsection 1731(b), "it would have been out of compliance with the law."  DiBartolo, 171 F.3d at 170, n.4.

9

that insofar as the court in DiBartolo found that a corporation can waive UM benefits– so long as the corporation specifically complies with the statutory waiver language– it is necessarily the case that section 1731 applies to corporate fleet policies.

The Third Circuit's prediction that the Supreme Court of Pennsylvania would rule that corporations can waive UM benefits by following subsection 1731(b) carries with it the necessary implication that corporations must follow 1731(c) in order to waive UIM benefits. See DiBartolo, 171 F.3d at 170, n.4. We also do not find any ambiguity inherent in subsection 1731(c). The language used by the Pennsylvania legislature may be better suited to an individual policy, but no terms in subsection 1731(c) purport to exclude any entity from its mandate. We also find no merit in the defendants' reliance on the fact that subsection 1731(c) does not refer to corporations– if the legislature wanted to exclude corporate policies from the subsection's coverage it could have done so explicitly. Finally, we are not persuaded that the Supreme Court of Pennsylvania would treat section 1731 and section 1738 identically– the patent absurdity of stacking UM and UIM benefits in the commercial fleet context is the strongest explanation for that court's decision in Everhart and no such absurdity results from forcing corporations to comply with the simple language found in subsection 1731(c).[3] Accordingly, the defendants' motion for summary

---

[3] To the extent it is relevant, it is clear from the record that Abbott and Discover did attempt to comply with subsection 1731(c), rendering somewhat hollow the defendants argument that subsection 1731(c) does not apply to corporations. The record shows that these entities sought to waive UIM coverage in all the states which allowed waiver. The record also shows that, with respect to Pennsylvania, the entities simply failed to comply with subsection 1731(c), at the peril of the specific compliance

judgment will be denied with respect to whether section 1731 applies to corporation. The plaintiffs' motion will be granted with respect to the same.

**2. Whether the Policy was Delivered or Issued for Delivery in Pennsylvania**

The defendants argue that it is the plaintiffs' burden to prove that the Abbott policy was delivered or issued for delivery in the state of Pennsylvania. The defendants cite Bamber v. Lumbermans Mut. Cas. Co., 680 A.2d 901, 903-04 (Pa. Super. Ct. 1996) which held that a policy issued and delivered in Washington, D.C. for primary coverage of vehicles registered in Washington, D.C., Illinois, and California– and incidentally covering Bamber's Pennsylvania-registered personal vehicle when used in the course of employment– was not subject to the mandatory offering provision of subsection 1731(a). The defendants contend that Abbott's policy was issued for delivery in Illinois.[4] We note that 75 PA. CONS. STAT. ANN. §§ 102 and 1702 do not define "delivery" or "issuance."

We determine that there is no genuine issue of material fact but that Abbott's policy was issued for delivery in Pennsylvania. Preliminarily, Bamber does not control our analysis. The car at issue there was the plaintiff's personal vehicle which enjoyed ancillary coverage under the

---

requirement of subsection 1731(c.1).

[4] The plaintiffs frame the issue as one of choice of law. The plaintiffs' argument seems misplaced. The defendants are not arguing that any other state's law should apply in place of Pennsylvania law. The defendants argue about how Pennsylvania law applies in this case– that is, whether the policy was delivered or issued for delivery in Pennsylvania such that subsection 1731(a) applies. Thus we do not have a choice of law question before us.

11

commercial policy in that case. The policy in that case was issued in Washington, D.C. to cover vehicles registered in D.C., Illinois, and California. It was the plaintiff's personal car that was registered in Pennsylvania and plaintiff obtained coverage for that vehicle under his employer's policy only because of the fact that he happened to be using the personal vehicle in the course of his employment. The case presently before the court is not one of such limited facts– Discover clearly issued the policy to Abbott in order to cover corporate vehicles registered in Pennsylvania.

Turning to the policy itself, it is apparent that the defendants' argument is unavailing. The policy is replete with references to Pennsylvania law and clearly evinces that it has been created to insure vehicles operating in Pennsylvania. (See, e.g., Pls.'s Ex. B, Pennsylvania UM Coverage Selection / Rejection Form (Doc. 55-1 at 47); Pls.'s Ex. B, Pennsylvania UIM Coverage Selection / Rejection Form (Doc. 55-1 at 48); Pls.'s Ex. B, Pennsylvania Auto Supplemental Application (Doc. 55-1 at 49) (stating "Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits to you. . ."); Pls.'s Ex. B, Pennsylvania Antifraud Notice (Doc. 55-1 at 50)). Were the court to find that this policy is not within the purview of section 1731, based on the defendants' interpretation of issuance and delivery, we would allow corporations to evade Pennsylvania law based merely on a self-serving "delivery" location. We are convinced that this was not the Pennsylvania legislature's intent in drafting subsection 1731(a). Accordingly, the defendants' motion for summary judgment will be denied with respect to whether Abbott's policy was delivered or issued for delivery in Pennsylvania. Summary judgment will be granted to the

plaintiffs as to this issue.

### 3. Whether Discover's Waiver Substantially Complies With § 1731(c)

The defendants argue that Discover's UIM waiver differs minimally from the statutory form and, therefore, substantially complies with the statute. The plaintiffs cite American Int'l Ins. Co. v. Vaxmonsky, 916 A.2d 1106 (Pa. Super. Ct. 2006), where the Pennsylvania Superior Court, relying predominantly on subsection 1731(c.1), held that an insurer's underinsured motorist ("UIM") coverage waiver was null and void for failure to comply with Subsection 1731(c) of the MVFRL. This court has already found Vaxmonsky persuasive in interpreting the specific compliance requirements of subsection 1731(c.1) in a case similar to that before us. See Grassetti v. Property & Cas. Ins. Co., No. 3:10cv2068, 2011 U.S. Dist. LEXIS 42731 (M.D. Pa. Apr. 20, 2011) (applying Vaxmonsky in a UM benefits case where plaintiff was covered by a personal automobile insurance policy). Given that Discover's UIM waiver form here does not specifically comply with subsection 1731(c), it is void. By the terms of subsection 1731(c.1), Pennsylvania law does not countenance substantial compliance in this context. Accordingly, the defendants' motion for summary judgment will be denied. The plaintiffs' motion for summary judgment will be granted and the waiver is null and void for failure to comply with subsection 1731(c).

### 4. Whether Occupants Can Reform Policy

The defendants argue that Herman Douglas is only eligible for such benefits as Abbott wishes to provide him. Defendants argue that only named insureds and relatives can reform an insurance policy– guests cannot compel UIM benefits. See Pennsylvania Nat'l Mut. Cas. Co. v.

13

Black, 916 A.2d 569, 581, n.18 (Pa. 2007) ("it is not clear whether the MVFRL mandates the offer of underinsured motorist coverage for guest passengers").

The plaintiffs respond that Herman Douglas was not a guest. He was the primary driver of the vehicle in question, plaintiffs argue, and clearly an intended beneficiary of Abbott's policy. The plaintiffs base their argument on the caveat in Black, that "occupants of vehicles, who are not named insureds or resident relatives of named insureds, are class two insureds who do not have a contractual relationship with the insurer as they have not paid premiums for the coverage and are not specifically intended beneficiaries of the policy." Black, 916 A.2d at 572, n.3 (emphasis added) (citing Utica Mut. Ins. Co. v. Contrisciane, 473 A.2d 1005, 1010-11 (Pa. 1984).

Factually, we agree that Herman Douglas was not merely an occupant or guest at the time of the accident. He was the driver of the vehicle and covered by Abbott's policy. The purpose of the policy was to insure Abbott's employees while they were driving. Legally, it is incomplete to say that Herman Douglas is only eligible for those benefits which Abbott, as the insured, wished to provide him. Herman Douglas is also eligible for those benefits which Abbott may not have wished to provide him but which Abbott did not disclaim in conformance with Pennsylvania law.

In summary, we conclude that Discover's UIM waiver is null and void under 75 PA. CONS. STAT. ANN. § 1731(c.1). Summary judgment will be entered in favor of the plaintiffs on Count I of the complaint seeking a declaratory judgment.

**B. Bad Faith**

Count II of the plaintiffs' complaint alleges a violation of Pennsylvania's bad faith statute. Pennsylvania's insurance bad faith

statute, 42 PA. CONS. STAT. ANN. § 8371, authorizes recovery for an insurance company's bad faith towards an insured. It provides for several remedies upon a finding of bad faith: (1) an award of "interest on the amount of the claim" at a rate equal to "the prime rate of interest plus 3%"; (2) an award of "punitive damages against the insurer"; and/or (3) an assessment of "court costs and attorney fees against the insurer." Id.

The Court of Appeals for the Third Circuit has adopted the legal standard established by the Pennsylvania Superior Court for testing the sufficiency of bad faith claims under section 8371, "both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Thus, "[i]n a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (citing Jung v. Nationwide Mutual Fire Insurance Co., 949 F. Supp. 353 (E.D. Pa. 1997); Leo v. State Farm Mutual Automobile Insurance Co., 939 F. Supp. 1186, 1192-1193 (E.D. Pa. 1996)).

While this test represents the general criteria, "[i]t is now clear . . . that section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices." Sawyer v. Fireman's Fund Ins. Co., No. 3:03-cv-0233, 2006 WL 167814, at *8 (M.D. Pa. Jan. 20, 2006) (citing O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999). The Third Circuit has

recognized that bad faith conduct extends to "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999).

The defendants argue that they did not act in bad faith towards the plaintiffs because they reasonably relied on Pennsylvania state court decisions in Bamber and Everhart in declining to pay UIM benefits. The plaintiffs argue that the defendants did not really act in reliance on this Pennsylvania caselaw, but rather acted in bad faith by ignoring Subsection 1731(c.1) and Vaxmonsky. We conclude that a genuine issue of material fact remains as to whether defendants acted in bad faith towards plaintiffs. A reasonable jury could credit either party's account of what motivated Discover's decision to deny benefits. Accordingly, the parties' respective motions for summary judgment will be denied.

**C. Class Action and Other Defendants**

The defendants other than Discover move for summary judgment, arguing that there is no genuine issue of material fact as to whether they violated section 1731 or acted in bad faith towards plaintiffs. The plaintiffs object, arguing that it would be premature to grant summary judgment before allowing discovery into these defendants towards a potential class action. They note that the parties have contemplated such discovery since March 2010. The plaintiffs also request that the court appoint a special master to expedite this process under Federal Rule of Civil Procedure 53.

The defendants' motion for summary judgment will be denied. As per the parties' joint case management plan and as agreed during the case management conference of March 9, 2010, a second case management conference will be scheduled to permit the plaintiffs limited discovery regarding class certification. The court will address the plaintiffs' request

for a special master during this second case management conference.

**CONCLUSION**

For the reasons stated above, the defendants' motion for summary judgment will be denied and the plaintiffs' motion for summary judgment will be granted, in part, and denied, in part.  Discover's motion for summary judgment will be denied with respect to Counts I and II.  The motion for summary judgment for lack of involvement, filed by the non-Discover Defendants, will also be denied.  The plaintiffs' motion for summary judgment will be granted with respect to Count I of the complaint, seeking a declaratory judgment that the waiver is null and void.  The motion will be denied with respect to Count II for bad faith.  A second case management conference will be scheduled to discuss discovery into a potential class action certification and appointment of a special master.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HERMAN DOUGLAS and CYNTHIA R. DOUGLAS,**<br><br>**Plaintiffs**<br><br>v.<br><br>**DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; THE TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT; TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA; THE CHARTER OAK FIRE INSURANCE COMPANY; ST. PAUL TRAVELERS COMPANIES, INC.; THE ST. PAUL TRAVELERS COMPANIES, INC.; THE TRAVELERS COMPANIES, INC.; STANDARD FIRE INSURANCE COMPANY OF CONNECTICUT; TRAVELERS INSURANCE GROUP HOLDINGS, INC.; TRAVELERS PROPERTY CASUALTY CORP.; and THE PHOENIX INSURANCE COMPANY,**<br><br>**Defendants** | **No. 3:08cv1607**<br><br>**(Judge Munley)** |

## ORDER

**AND NOW**, to wit, this  12th  day of August 2011, upon consideration of the parties' cross-motions for summary judgment (Docs. 55, 58) it is HEREBY **ORDERED** that the defendants' motion for summary judgment (Doc. 58) will be **DENIED** and the plaintiffs' motion for summary judgment (Doc. 55) will be **GRANTED**, in part, and **DENIED**, in part, as follows:

• The defendants' motion for summary judgment will be denied with respect to Counts I and II, and with respect to dismissal of the non-

      Discover Defendants.

- The plaintiffs' motion for summary judgment will be granted with respect to Count I for a declaratory judgment that Discover's waiver is null and void and denied with respect to Count II for Bad Faith.

The court will schedule a case management conference to permit limited discovery into class action certification and to entertain the plaintiffs' request for the appointment of a special master.

                                **BY THE COURT:**

                                **s/ James M. Munley**
                                **JUDGE JAMES M. MUNLEY**
                                **United States District Court**