IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEROY WEBB, et al., Individually
and on Behalf of all Others
Similarly Situated,

        Plaintiffs,

v.         3:08-CV-01607
        (JUDGE MARIANI)

DISCOVERY PROPERTY &
CASUALTY INSURANCE CO., et al.,

        Defendants.

## MEMORANDUM OPINION

### I. Procedural History

Presently before the Court is Plaintiff's Motion for Class Certification and for Appointment of Class Counsel by which they aspire to class action status. (*See* Pls.' Mot. for Class Certification and Appointment of Howard G. Silverman, Esq. and Kane & Silverman, P.C. as Class Counsel, Doc. 95.) The gravamen of the underlying action concerns the adequacy of certain waiver forms that the Defendant insurance company supplied to policyholders when those policyholders had the option to accept or reject underinsured motorist protection ("UIM"). (*See* Pls.' Mem. in Supp. of Mot. for Class Certification, Doc. 95-1, at 2-3.)

Pennsylvania law requires that, to be valid, a UIM waiver must read as follows:

**REJECTION OF UNDERINSURED MOTORIST PROTECTION**
By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household.

> Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

75 Pa. Cons. Stat. Ann. § 1731(c).

By contrast, Defendant's UIM waiver form reads as follows:

> *I reject Underinsured Motorists Coverage under this policy.* By signing this waiver I am rejecting Underinsured *Motorists* Coverage under this policy, for myself and all relatives residing in my household. Underinsured *Motorists* protects me and all relatives *residing* in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for ["all" omitted] losses and damages. I knowingly and voluntarily reject this coverage.

(Doc. 95-2 at 1 (Form No. UA 237 ED 01 00); Doc. 95-7 at 2 (Form UA 137 ED 11 04).)[1]

Though these changes may appear minor, the Pennsylvania Superior Court ruled in the case of *American International Life Insurance Co. v. Vaxmonsky*, 916 A.2d 1106 (Pa. Super. Ct. 2006) that any departure from the statutory form—even the most minor—will render the waiver void. *See id.* at 1109-1111; *see also Jones v. Unitrin Auto and Home Ins. Co.*, 40 A.3d 125, 131 (Pa. Super. Ct. 2012) (holding that additions to the statutory language, and not just deletions from it, "fail to specifically comply with the statute" and render the form "completely void"). In a prior decision in the instant case, then-presiding Judge Munley ruled that *Vaxmonsky* applied to void Defendant's waivers. (*See* Opinion of Aug. 12, 2011, Doc. 67, at 13.) Accordingly, for purposes of the law of this case, the

---

[1] Both of the forms at issue use identical language. The differences between Defendants' waiver form and the text laid out in 75 Pa. Cons. Stat. Ann. § 1731(c) are italicized or noted parenthetically as appropriate.

2

invalidity of Defendant's waivers is no longer in question. Rather, the only question to resolve at this stage is whether the Plaintiffs may seek redress for their injuries through a class action, or whether they must do so through individual claims.

In this regard, Plaintiffs' most recent[2] proposed class definition reads as follows:

> All those persons injured in motor vehicle accidents as the result of the negligence of an underinsured driver as defined at 75 Pa. C.S.A. 1701 et seq. from May 8, 2000 to the present while occupants of motor vehicles registered in Pennsylvania and insured under a motor vehicle policy of insurance issued by Discover Property and Casualty Insurance Company providing coverage under, inter alia, Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. 1701 et seq. where Rejection of Underinsured Motorist Protection form No. UA 237 ED 01 00 or No. UA 137 Ed 01 04 was executed before an accident with an underinsured motorist.
>
> The class shall be limited to those individuals whose UIM claims accrued on or after August 5, 2004, provided that this limitation shall not apply to a minor or incompetent whose claim for UIM coverage would not be otherwise barred by the Pennsylvania statute of limitations
>
> The Class does not include any insured under a policy for which the named insured signed a subsequent rejection form that is compliant with 75 Pa. C.S.A. §1731(c) prior to the insured's motor vehicle accident, or whose UIM claim has already been adjusted up to the bodily injury limits in the applicable policy.

(Doc. 110 at 4-5.)

---

[2] Plaintiffs' Motion for Class Certification states a slightly different class definition. Plaintiffs proposed the following definition in their Reply Brief in order to answer some of the issues raised in Defendants' Brief in Opposition to class certification. (See Pls.' Reply Mem. in Supp. of Mot. for Class Certification and Appointment, Doc. 110, at 1, 4.)

3

## II. Class Action Certification

### a. In General

The Federal Rules of Civil Procedure require Plaintiffs to establish two sets of facts before proceeding with a class action. First, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If these requirements are satisfied, then the Court moves to Rule 23(b), which provides, in relevant part, that:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; . . . . or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

4

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* at 23(b).

Defendants contest the applicability of Rule 23(a)(1) ("numerosity"), (a)(2) ("commonality"), and (a)(3) ("typicality"), as well as the requirements set forth in Rule 23(b)(1), and (b)(3), to the facts of this case.³ (*See* Def.'s Mem. of Law in Opp. to Mot. for Class Certification, Doc. 109, at 6-19.)⁴

As the Supreme Court stated, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The *Dukes* Court also noted both that "'sometimes it may be necessary for the court to probe behind the pleadings before

---

³ Plaintiffs do not raise Rule 23(b)(2) as a grounds for certification in their Motion, but only do so later in their Reply Brief. (*See* Doc. 110 at 9-10.) Therefore, the Court will not rule on the applicability of Rule 23(b)(2), as not being properly before the Court. As this Court stated in a recent case, it is improper to rule on issues raised for the first time in a Reply Brief:
> In ruling on a motion, "a district court need not address issues raised for the first time in a reply brief." *Dreyer v. Sheaffer*, 2009 WL 917829, at *3 (M.D.Pa.2009). That is because "[a] reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues." *United States v. Martin*, 454 F.Supp.2d 278, 281 n. 3 (E.D.Pa.2006) (collecting cases).

*Matthews v. Runco's Tavern & Grill, Inc.*, 2013 WL 6055219, at *2 (M.D. Pa. 2013).

⁴ Though Defendant refers to Rule "23(b)(2)" and "23(b)(3)" in its Brief in Opposition when it discusses the commonality and typicality requirements, it is clear from the nature of Defendant's legal analysis that it actually means to refer to Rule 23(a)(2) and 23(a)(3). (*See* Doc. 109 at 8-13.) These latter subsections are the only ones where the commonality and typicality rules are found.

5

coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (quoting *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160-161, 102 S. Ct. 2364, 2372, 72 L. Ed. 740 (1982)). With these directives in mind, the Court will now turn to the Rule 23(a) factors.

### b. Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

> While the law is well-established that a plaintiff "need not show the exact number of potential [members] in order to satisfy the [numerosity] requirement," it is equally well-established that "the plaintiffs do have the burden of showing that the size is such that the joinder of all members is impracticable. Mere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1)."

*Jackson v. Se. Pa. Transp. Auth.*, 260 F.R.D. 168, 187 (E.D. Pa. 2009) (quoting *Delgado v. McTighe*, 91 F.R.D. 76, 78 (E.D. Pa. 1981)).

In the present case, Plaintiffs argue that the numerosity requirement is satisfied because Defendant issued policies with invalid waivers "to a total of approximately 235 separate named individuals . . . . Further, since these are *all* commercial policies, there are *multiple* insured persons under *each* of the 235 named insureds' policies. Thus, the number of potential class members may be in the thousands." (Doc. 95-1 at 7.)

However, even if the Court were to assume that thousands of people drove vehicles subject to invalid waiver forms, this would not be sufficient to establish numerosity. Under

6

Plaintiffs' own proposed class definition, class members must also be "persons injured in motor vehicle accidents as the result of the negligence of an underinsured driver as defined at 75 Pa. C.S.A. 1701 et seq." Defendant avers—and Plaintiffs do not deny—that

> [d]iscovery so far has revealed only four prospective class members [as well as a "fifth possible claim" that does not appear to have "developed into an underinsured motorist claim"], one of which was a former Plaintiff in this action who withdrew his claim with prejudice when he was forced to concede he was not entitled to coverage. The other two claimants are separately represented by counsel.

(Doc. 109 at 7.)

Plaintiffs respond by arguing that "[t]he class cannot be limited, as Defendants contends [*sic*], to those persons who have already made UIM claims and have already sought reformation of the policy." (Doc. 110 at 5.) That is because a "UIM claim may arise years after an insured has been injured in an accident and made a claim against the tortfeasor." (*Id.*) Essentially, then, Plaintiffs ask this Court to use the total number of insurance policies containing invalid waiver forms as the proper reference for numerosity, simply because some of these insureds might later bring claims for UIM coverage.

But whether new class members might materialize in the future is irrelevant to a finding of numerosity. While Plaintiffs are not required to prove the exact number of class members, they "must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Marcus v. BMW of N. Am.*, 687 F.3d 583, 596 (3d Cir. 2012). Common-sense, guesswork, or even reliance on what the Third Circuit called "a

7

bet worth making" cannot circumvent Plaintiffs' burden to show sufficient evidence of numerosity under Rule 23(a)(1). *See id.* at 596-97. As the Supreme Court emphasized in *Dukes*, it is the Plaintiffs' burden to "affirmatively demonstrate" compliance with Rule 23. *Dukes*, 131 S. Ct. at 2551. The mere possibility that more people might later satisfy the conditions necessary to become class members obviously falls far short of this affirmative demonstration.

Therefore, putting aside Plaintiffs' speculative conclusions, the Court only has evidence of at most five class members, some of whom may actually be barred from bringing claims. Joinder of such a small number would not be impracticable; rather, it would be an efficient means of resolving these issues. Accordingly, the Court finds that the numerosity requirement is not satisfied.

### c. Commonality and Predominance

The requirements in Rule 23(a) are inclusive, meaning that, if one requirement is not satisfied certification, must be denied. Nonetheless, as an independent basis of its decision, the Court finds that the commonality and predominance analysis would bar class certification even if numerosity did not.

Under what is called the "commonality" requirement of Rule 23, the Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Ordinarily, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal*

*for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). However, as the Supreme Court recently held, the commonality requirement is not met even if the Plaintiffs raise "droves" of common questions, if these common questions are not the kind that would be of such a nature as to lead to *classwide resolution* of the claims at issue. *See Dukes*, 131 S. Ct. at 2551 ("[The Plaintiffs'] claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Here, the only common question concerns the validity of the waiver forms that all class members signed. This is arguably a relevant issue of common contention under *Dukes* because the invalidity of the waiver forms is central to all of the class members' claims—in other words, none of the class members could proceed at all if the waivers were valid.

However, the Court need not dwell on the commonality requirement because it finds that the proposed class clearly fails Rule 23's "predominance" requirement. Because the predominance requirement covers the same subject matter as commonality, but does so in a more broadly-defined manner, it is often found to "subsume" commonality. *See, e.g., Georgine v. Amchen Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[W]e do not hold that this class fails the commonality requirement because the test of commonality is subsumed

9

by the predominance requirement, which this class cannot conceivably meet.").[5] The predominance requirement, found in Rule 23(b)(3), states that, for a class action to go forward, the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Advisory Committee Notes to Rule 23 provide guidance as to what kinds of cases may be found to satisfy the predominance requirement. For instance, "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Fed R. Civ. P. 23(b)(3) advisory committee's notes. Despite superficial similarities to such

---

[5] Theoretically, even if predominance subsumed commonality and then failed, the test laid out in Rule 23(b)(1) could still allow a class action to go forward if all the prerequisites in Rule 23(a) were met. However, even if all of the prerequisites were met, the requirements of Rule 23(b)(1) have not been met.

First, this case presents no risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." See Fed. R. Civ. P. 23(b)(1)(A). Just because a Defendant who is sued by several different but similarly-situated Plaintiffs may be found liable to some and not liable to others does not mean that "incompatible standards of conduct" are being demanded; it only means that the Defendant would have to pay some claims and not others under state law tort and damage assessment principles of general application. Litigation will always be uncertain and capable of generating varying conclusions. This does not justify pulling all potential Plaintiffs together into one binding class.

Second, there is no risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." See id. at 23(b)(1)(B). Indeed, Plaintiffs' only argument to this effect is that any individual action "would create precedent that would presumably be followed by other courts and would direct Defendant's future claims handling." (Doc. 95-1 at 12.) But any adjudication can create precedent; this does not mean that any judicial decision that might be precedential to third parties creates the need for a class action.

cases of misrepresentation, the Court finds that the present case is much more similar to the Advisory Committee's guidance on mass tort cases. The Committee stated that a "'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." *Id.* In other words, "[t]he Committee's warning . . . continues to call for caution when individual stakes are high and disparities among class members great." *Amchem Products v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997).

Here, as Defendant correctly notes, disparities among class members may very well be great, making this case analogous to a mass tort inappropriate for classwide resolution:

> The question of the existence of coverage is only one issue in a UIM proceeding. Each UIM claim would require an investigation into the circumstances of the accident. Conflicting witness statements would have to be resolved. Liability experts may be necessary to determine if the class member is even eligible to recover benefits. The nature and extent of the injuries would then have to be evaluated. Medical records would need to be reviewed and analyzed, and a medical examination of the insured would likely be required. A statement under oath to determine the subjective impact of the injuries on the claimant would need to be obtained.

(Doc. 109 at 10.)

Thus, even though the insurance waivers may be "standardized," this Court cannot agree in this case with the reasoning in *Briggs v. Hartford Fin. Services Group, Inc.*, 2009 WL 2370061 (E.D. Pa. 2009), that the mere existence of "standardized insurance waiver forms that are contractual in nature" is sufficient to satisfy the predominance requirement.

*See id.* at *6. While the invalidity of the waiver forms may well be one of several necessary conditions to recovering UIM coverage, it is certainly not sufficient by itself. Indeed, even though UIM coverage was not validly waived, each individual class member's entitlement to actually receive benefits will depend on a host of individualized considerations pertaining to the facts of each policyholder's accident, and injuries, as noted above. These issues do not solely concern the calculation of individual damages, as Plaintiffs assert. (*See* Doc. 110 at 11.) Instead, they concern the very existence of Defendant's *liability* to pay any coverage to individual policyholders, which the Advisory Committee Notes caution against resolving through the class action mechanism.

Moreover, the stakes for each individual class member are indeed high. By definition, the class members are policyholders whose damages were large enough that the other party's insurance coverage was not enough to make them whole. As such, they are people who have a strong incentive to bring their own claims directly, outside of the class action mechanism. In the absence of any evidence that these claims would not be litigated individually, the Court finds no need to bind these policyholders to the determination of an action that they have not manifested any desire to join. Nor can the Court find any reason to accept the Plaintiffs' conclusory statement that "in the absence of a class action on this issue, many class members, especially those not represented by counsel, would likely rely on the invalid waiver forms and/or the denial of their claims by the Defendants, and simply give up without ever learning that the waiver forms are invalid." (Doc. 95-1 at 14.) Given

the likely extent of any potential plaintiff's injuries, the Court cannot simply assume that they will blithely forego their own means of redress or proceed in any manner different from the Webb and Douglas Plaintiffs, who have apparently retained counsel to defend their interests before this Court.

### d. Remaining Considerations

Based on the foregoing, the Court need not address Rule 23's "typicality" requirement. *See generally* Fed. R. Civ. P. 23(a)(3). The typicality requirement is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57. It "entails an inquiry whether the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Id.* at 57-58 (internal quotations and alterations omitted). Moreover, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* at 58 (internal quotations and alterations omitted). The Court finds no reason to believe that these concerns apply to the present case: the legal theories that the named Plaintiffs and any other purported class members might rely on are sufficiently similar to support a finding of

typicality. However, the defects in the other Rule 23 requirements, discussed at length above, are sufficient to make compliance with the typicality requirement a moot point.

Likewise, Plaintiffs' request to appoint class counsel, (*see* Doc. 95-1 at 15-17), has been rendered moot by the disposition of this case, because there shall be no class action.

## III. Conclusion

Based on the foregoing considerations, Plaintiffs' Motion for Class Certification (Doc. 95) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge