# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERMAN DOUGLAS and CYNTHIA DOUGLAS, | : <br> : <br> : |
| Plaintiffs, | : <br> : <br> : |
| v. | :     **3:08-CV-01607** <br> :     **(Judge Mariani)** |
| DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY, | : <br> : <br> : |
| Defendant. | : |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court are Cross Motions for Summary Judgment (Docs. 131;

132). For the reasons that follow, the Court will deny Plaintiffs' Motion, deny Defendant's

Motion on Count I of Plaintiff's Complaint, and grant Defendant's Motion on Count II.

### II.    Statement of Undisputed Facts

"On August 21, 2005, Plaintiff Herman Douglas [a Pennsylvania resident] was

involved in a traffic accident while operating a vehicle owned by his employer, the

pharmaceutical manufacturer Abbott Laboratories, Inc." (*See* Def.'s Statement of Mat.

Facts, Doc. 133, at ¶¶ 1, 13.) "Douglas was not at fault for the accident." (*Id.* at ¶ 2.)

Douglas's employer Abbott Laboratories maintained "a fifty-state insurance policy from

Discover that covered [Douglas's] vehicle as well as others in Abbott's corporate fleet," (*id.*

at ¶ 3), which "was in full force and effect at the time of the accident," (Pls.' Mot. for Summ.

J., Doc. 131, at ¶ 6).[1] Douglas "was a permissive user of the vehicle and an insured under the Discover policy at the time of the accident." (Id. at ¶ 8.) "The vehicle being operated by Plaintiff Herman Douglas at the time of the accident was registered and principally garaged in the Commonwealth of Pennsylvania." (Id. at ¶ 9.) "The declaration sheet at the time of this accident for the vehicle that Plaintiff was operating did not reflect underinsured motorist coverage." (Id. at ¶ 10.)

"In April 2006, Douglas filed a claim with the negligent driver's insurance company, State Farm Fire and Casualty Company." (Doc. 133 at ¶ 6.) "On May 8, 2007, State Farm paid Douglas $15,000, which represented the bodily injury liability limits under the negligent driver's policy." (Id. at ¶ 7.) "On September 22, 2005, while the accident investigation was pending, Douglas filed a request for first-party medical and UIM [underinsured motorist] benefits under the Discover policy." (Id. at ¶ 8.) "Discover subsequently approved Douglas' request for first-party medical benefits, which were limited to $5,000 under the policy." (Id. at ¶ 10.) However, "[o]n April 13, 2006, Discover informed Douglas that Abbott had waived

---

[1] Plaintiffs' purported Statement of Material Facts does not comply with the Middle District of Pennsylvania's Local Rule 56.1. That rule requires that a "motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 shall be accompanied by a *separate*, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1 (emphasis added). Plaintiffs' statement of fact is incorporated in the body of their Motion and is therefore not a "separate" statement of facts. Nonetheless, Defendant responded to this submission as if it were a Local Rule 56.1 fact statement. (See Def.'s Counterstatement of Mat. Facts, Doc. 138, at 1.) Given the courts' preference to have the issues raised on summary judgment decided on their merits rather than by procedural defaults, the Court will waive strict compliance with the Rule in this instance and construe Plaintiffs' submission as Defendant has done.

2

UIM benefits when applying for the policy." (*Id.* at ¶ 11.)[2] In an attachment to Discover's April 13 letter, it included a copy of a form entitled "Pennsylvania Uninsured Motorists Coverage Selection/Rejection, Selection/Rejection of Stacked Uninsured Coverage Limits." (Bertrand Letter at 3; *see also* Doc. 131-2 at 2 (same form and waiver, in terms of *underinsured* motorists coverage). These forms were executed on Abbott's policy and signed by an Abbott representative on December 31, 2004. (Doc. 131-2 at 1-2.) The representative checked a box to waive both Uninsured and Underinsured Motorists Coverage and to waive stacking of the coverage limits of the same. (*Id.*)

Douglas responded in a letter of May 1, 2007—and has continued to contend throughout this lawsuit—that the waiver "was void because it does not precisely track the statutory waiver language set forth in 75 Pa. Cons. Stat. § 1731(c)." (Doc. 133 at ¶ 12; *see also* Donald Yablon Letter, May 1, 2007, Doc. 133-15; Doc. 131 at 19 )[3] He bases his argument on the case *American International Insurance Co. v. Vaxmonsky*, 916 A.2d 1106 (Pa. Super. Ct. 2006), which held, as this Court previously explained, "that any departure from the statutory [waiver] form [provided in section 1731(c)]—even the most minor—will render the waiver void." (*See* Mem. Op. Denying Class Certification, Jan. 9, 2014, Doc. 115, at 2.) Thus, the Court wrote:

---

[2] Plaintiffs deny this averment on the ground that it relies on a letter which speaks for itself. (Pls.' Resp. to Defs.' Statement of Mat. Facts, Doc. 136, at ¶ 11.) But the letter says what Defendants represent it as saying. (*See* Ted Bertrand Letter, Apr. 13, 2006, Doc. 133-14, at 1.) Therefore, the Court deems this fact not in reasonable dispute.

[3] Plaintiffs deny this averment for the same reasons in footnote 2, *supra*. (Doc. 136 at ¶ 12.) The same considerations discussed there apply here as well.

3

Pennsylvania law requires that, to be valid, a UIM waiver must read as follows:

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

75 Pa. Cons. Stat. Ann. § 1731(c).

> By contrast, Defendant's UIM waiver form reads as follows:
> *I reject Underinsured Motorists Coverage under this policy.* By signing this waiver I am rejecting Underinsured *Motorists* Coverage under this policy, for myself and all relatives residing in my household. Underinsured *Motorists* protects me and all relatives *residing* in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for ["all" omitted] losses and damages. I knowingly and voluntarily reject this coverage.

(Doc. 95-2 at 1 (Form No. UA 237 ED 01 00); Doc. 95-7 at 2 (Form UA 137 ED 11 04).)

(*Id.* at 1-2.)[4]

On May 9, 2007, Douglas's counsel "provided Discover with a copy of the

*Vaxmonsky* opinion." (Doc. 131 at ¶ 19; *see also* Donald Yablon Fax, May 9, 2007, Doc.

131-6 (faxing *Vaxmonsky* opinion).)[5] Mark Gordon, a different attorney retained in a

separate case, likewise informed Discover in connection with his own case on December 5,

---

[4] In quoting Discover's language, the Court's Opinion italicized additions and noted deletions parenthetically.

[5] Defendants do not appear to contest the truth and accuracy of the exhibits cited in this paragraph. They merely state that the documents speak for themselves and that Plaintiffs' representations of those documents accurately reflect the contents thereof. (*See* Doc. 138 at ¶¶ 19-21, 26.)

2007 that Discover's UIM waiver form was invalid under *Vaxmonsky* and included a copy of that decision. (Doc. 131 at ¶ 20; Mark Gordon Letter, Dec. 5, 2007, Doc. 131-7.)

Thus, Discover was possibly aware of legal defects in its waiver form as early as Yablon's May 1, 2007 letter. Indeed, emails to and among Discover employees, (marked "urgent") began addressing this issue on December 7, 2007. (*See* Discover Emails, Doc. 131-8, at 7-8.) On that date, one William Laborie wrote: "[A]ttached is a letter from Mark Gordon confirming our fear that Discover Re did not use the correct wording when they drafted the UM/UIM rejections [*sic*] forms for Smith/Franklin and most likely all other FS members." (*Id.* at 8.) "Discover's Carolyn Fugge then sought the advice of Beth Tirone at [former Defendant] Travelers [Indemnity Company] (which owned Discover)" on this issue. (Doc. 131 at ¶ 21.) Fugge wrote:

> Beth, see the emails below concerning the PA UM/UIM offer form. The current DP&C one reads the same as the current Travelers form for the rejection wording. I want to go ahead and revise the DP&C one asap – I know that PA was in the second phase of the reviews – can you move it up to the top of list perhaps since this matter has come to light?

(Doc. 131-8 at 3.) She also requested "a legal opinion as to the validity of the statements made by [Gordon] in the attached email." (*Id.* at 2.)

"[O]n March 7, 2008, new forms, including new UIM waivers, were filed with the [Pennsylvania] Insurance Department on behalf of Discover." (Doc. 131 at ¶ 26.) In its Filing Memorandum to that Department seeking approval of the new forms, Discover stated in part that "[t]he rejection and waiver provisions have been reworded slightly to match the

5

statutory required wording in PA stat. 1731 and 1738." (Filing Memorandum, Doc. 131-12, at 2.)

Nonetheless, Discover denied Douglas's claim for UIM coverage and continues to deny as of at least the last filing before the Court. (See Doc. 131 at ¶¶ 27-29.)

## III.    Statement of Disputed Facts

There is a dispute as to whether the Plaintiff has been fully compensated for his injuries. As discussed above, he received $15,000 from the tortfeasor's insurance company and $5,000 for first-party medical expenses from Discover. Defendant argues that "[t]he sole damages of which Douglas has produced any proof are medical bills totaling $8,021, all of which have been covered by some combination of the first-party medical benefits provided by Discover and the $15,000 settlement that Douglas obtained from State Farm." (Defs.' Br. in Supp. of Mot. for Summ. J., Doc. 134, at 14-15.) In response, Plaintiff submitted a host of medical records to the summary judgment record. (See generally Exhs. to Pls.' Reply Br. in Supp. of Mot. for Summ. J., Doc. 140-1.) These include medical bills from various providers (much of which appears to be covered by another insurance carrier). The bills still render, at most, total charges below the $20,000 that Douglas received. (See id. at 15-17, 63, 70, 134, 150.)

However, as Plaintiffs point out, Douglas was also "left with reduced ability to exercise and enjoy activities with his children and relations with his spouse." (Pls.' Reply Br. in Supp. of Mot. for Summ. J., Doc. 140, at 7.) These damages are by their very nature

6

difficult to quantify and would not be expected to be subject to documentary proof. To the

extent documentary proof is necessary, however, these concerns were reflected in a report

of Dr. William J. O'Brien, who wrote on June 20, 2006:

> The patient was last seen in this office on June 20, 2006. At that time he
> continued to complain of back pain. He noted that it was worse with driving,
> specifically when he has to drive for work. The patient stated that he cannot
> "work out" as he did prior to this accident. He noted that he has difficulty with
> sexual relations due to his back pain. He also complained of tingling in his
> hands and feet. He has difficulty carrying his two year old child on his back
> anymore and this depresses him. He also has difficulty lifting his other
> children as he did previous to this accident.

(Doc. 140-1 at 26.) Dr. O'Brien concluded: "The patient is acutely aware that his abilities to

function normally have been altered. He no longer can play with his children and [*sic*] has

affected his work as well as relations with his spouse." (*Id.*)

## IV.    Procedural History

This case was removed to federal court on August 27, 2008 and assigned to the

Honorable Judge James Munley. The Plaintiffs' Complaint initially sued a host of insurance

company defendants and in a putative class action. (*See* Compl., Doc. 1, Ex. A, at 1-2.) It

alleges three counts. Count I is styled "Declaratory Judgment" and seeks, *inter alia*, a

declaration that the Defendants' allegedly noncompliant waiver forms are void as a matter of

law and that the Plaintiffs are "entitled to underinsured motorist benefits equal to the liability

limits pursuant to the policies issued by Defendants." (*Id.* at 13-15.) Count II alleges bad

faith under 42 Pa. Cons. Stat. Ann. § 8371. (*Id.* at 15-17.) Count III sought appointment of a

7

Special Master "to adjudicate the underinsured motorist claims of the member [*sic*] of the class through arbitration." (*Id.* at 17-20.)

The parties filed their first Cross-Motions for Summary Judgment in late December 2010 (Docs. 55; 58). Judge Munley denied the Motions in most respects, but granted Plaintiffs' Motion as to its request for a declaratory judgment that the waiver forms were null and void as a matter of law. (*See* Opinion Granting & Denying Summ. J., Aug, 12, 2011, Doc. 67, at 18-19.) In so ruling, Judge Munley first considered and rejected Defendants' argument that section 1731 does not apply to commercial fleets, but rather only to individual insureds. (*Id.* at 7-11.) He then turned to Defendants' argument that the policy was not delivered or issued for delivery in Pennsylvania, and reasoned as follows:

> The defendants argue that it is the plaintiffs' burden to prove that the Abbott policy was delivered or issued for delivery in the state of Pennsylvania. The defendants cite *Bamber v. Lumbermans Mut. Cas. Co.*, 680 A.2d 901, 903-04 (Pa. Super. Ct. 1996) which held that a policy issued and delivered in Washington, D.C. for primary coverage of vehicles registered in Washington, D.C., Illinois and California—and incidentally covering Bamber's Pennsylvania-registered personal vehicle when used in the course of employment—was not subject to the mandatory offering provision of subsection 1731(a). The defendants contend that Abbott's policy was issued for delivery in Illinois. We note that 75 Pa. Cons. Stat. Ann. §§ 102 and 1702 do not define "delivery" or "issuance."
>
> We determine that there is no genuine issue of material fact but that Abbott's policy was issued for delivery in Pennsylvania. Preliminarily, *Bamber* does not control our analysis. The car at issue there was the plaintiff's personal vehicle which enjoyed ancillary coverage under the commercial policy in that case. The policy in that case was issued in Washington, D.C. to cover vehicles registered in D.C., Illinois, and California. It was the plaintiff's personal car that was registered in Pennsylvania and plaintiff obtained coverage for that vehicle under his employer's policy only because of the fact that he happened to be using the personal vehicle in the course of his

8

employment. The case presently before the court is not one of such limited facts—Discover clearly issued the policy to Abbott in order to cover corporate vehicles registered in Pennsylvania.

Turning to the policy itself, it is apparent that the defendants' argument is unavailing. The policy is replete with references to Pennsylvania law and clearly evinces that it has been created to insure vehicles operating in Pennsylvania. (*See, e.g.,* Pls.'s Ex. B, *Pennsylvania* UM Coverage Selection/Rejection Form (Doc. 55-1 at 47); Pls.'s Ex. B, *Pennsylvania* UIM Coverage Selection/Rejection Form (Doc. 55-1 at 48); Pls.'s Ex. B, *Pennsylvania* Auto Supplemental Application (Doc. 55-1 at 49) (stating "Insurance companies operating in the *Commonwealth of Pennsylvania* are required by law to make available for purchase the following benefits to you. . ."); Pls.'s Ex. B, *Pennsylvania* Antifraud Notice (Doc. 55-1 at 50)). Were the court to find that this policy is not within the purview of section 1731, based on the defendants' interpretation of issuance and delivery, we would allow corporations to evade Pennsylvania law based merely on a self-serving "delivery" location. We are convinced that this was not the Pennsylvania legislature's intent in drafting subsection 1731(a). Accordingly, the defendants' motion for summary judgment will be denied with respect to whether Abbott's policy was delivered or issued for delivery in Pennsylvania. Summary judgment will be granted to the plaintiffs as to this issue.

(*Id.* at 11-13 (internal footnote omitted).) Judge Munley then held that, because "Discover's

UIM waiver form here does not specifically comply with subsection 1731(c), it is void." (*Id.* at

13.) Though the language used in both forms was very similar, "Pennsylvania law does not

countenance substantial compliance in this context." (*Id.* at 13.) Therefore, Judge Munley

concluded that "the defendants' motion for summary judgment will be denied" and "[t]he

plaintiffs' motion for summary judgment will be granted and the waiver is null and void for

failure to comply with subsection 1731(c)." (*Id.; see also id.* at 19.) He nonetheless denied

summary judgment on Count II for bad faith, on the basis of disputes of fact, and allowed

the case to proceed toward class certification. (*See id.* at 14-17.)

9

Shortly after the issuance of this Opinion, Defendants moved for the Court to amend its accompanying Order pursuant to Federal Rule of Appellate Procedure 5(a)(3) to allow Defendants to pursue an interlocutory appeal on the Court's decision to grant summary judgment on Count I. (*See* Defs.' Mot. to Amend Order, Doc. 70.) Before Judge Munley was able to rule on this Motion, the case was reassigned to the undersigned on November 14, 2011, following my appointment to the bench. On October 8, 2013, the Court referred the still pending Motion to Amend the Order to permit an interlocutory appeal back to its original author, Judge Munley, who denied it on October 10. (*See* Docs. 113; 114.)

In denying the Motion, Judge Munley first noted that

The following three criteria must be met for the court to exercise its discretion to grant an immediate appeal:
    (1) the order must involve a controlling question of law;
    (2) there must be substantial ground for difference of opinion as to the order's correctness and
    (3) immediate appeal will materially advance the ultimate termination of the litigation.

(Mem. Op. Denying Mot. to Amend Order, Doc. 113, at 4 (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).) He continued:

In the instant motion, the determinative factor is the second, whether substantial ground for difference of opinion exists as to the correctness of our summary judgment decision. The defendants raise several arguments to establish a substantial ground for difference of opinion. Principally, defendants contend that the policy waiver was valid under Pennsylvania law. Second, defendants claim that the policy was neither delivered nor issued for delivery in Pennsylvania. Third, the defendants argue that plaintiff lacks standing to reform the insurance policy.

(*Id.* (internal footnote omitted).) Judge Munley held that no substantial ground for difference of opinion existed as to Defendants' first argument because the Court's decision finding the waiver null and void was consistent with the case law voiding waivers that deviated from the statutorily proscribed language in ways that introduced ambiguity to the waiver form. While Judge Munley recognized a Third Circuit case that upheld the validity of deviations that did not create ambiguity, he found that the deviations in our own case did make the form ambiguous and were therefore invalid. (*See id.* at 5-6.) As to the second argument, he repeated the conclusions from his first Opinion, already quoted *supra*, and determined that "there are not substantial grounds for difference of opinion on this issue." (*Id.* at 7.) The third argument does not raise issues relevant to the matters pending before us now.

While all of this was pending, two important developments happened in the case. On May 22, 2012, the parties stipulated to voluntarily dismiss all insurance company defendants except for Discover under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (*See* Stipulation, Doc. 99, at 1.) Judge Munley had already granted Plaintiff's Motion to Voluntarily Dismiss Co-Plaintiffs Leroy Webb and Anna pursuant to Federal Rule 41(a)(2) on November 15, 2010. (*See* Order, Nov. 15, 2010, Doc. 54.)

The other development occurred on May 18, 2012, when Plaintiffs filed the long-expected Motion for Class Certification (Doc. 95). That Motion, however, was ultimately unsuccessful: the undersigned denied it on January 9, 2014, citing numerous defects in the

proposed class (particularly its lack of Rule 23 numerosity and predominance). (*See generally* Docs. 115; 116.)

Therefore, as of early 2014, this case—which originally pitted a putative class of potentially thousands of members against thirteen major insurance companies—had been reduced to a dispute between Mr. and Mrs. Douglas and Discover concerning only the Douglas's specific grievances.

The parties attempted to mediate their claims, without success. (*See* Docs. 122; 123.) Then, on June 10, 2014, counsel having informed the Court that no material disputes of fact existed and that the case could be decided on cross-motions for summary judgment, the Court allowed the parties one final opportunity "to file cross-motions for summary judgment on the remaining claims." (*See* Order, Jun. 10, 2014, Doc. 128 at, ¶ 1.) Plaintiffs' Motion argues that the Plaintiffs already received a favorable judgment from Judge Munley on their claim for UIM coverage and therefore seeks summary judgment on the bad faith claim only. (*See generally* Doc. 131.) Defendant's Motion seeks summary judgment on both the UIM and the bad faith claims. (*See generally* Doc. 132.) It is to these issues that the Court now turns.

## V.     Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

12

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

## VI. Analysis

### a. UIM Coverage (Count I)

Defendant argues that, notwithstanding Judge Munley's decision that section 1731 and *Vaxmonsky* render its waiver form null and void, summary judgment is still appropriate on Count I for UIM benefits. First, Defendant repeats the twice-rejected argument that the Abbott policy was never "issued or delivered" in Pennsylvania because it was a policy issued by an Illinois insurance company (Discover), prepared in Connecticut, and delivered to Abbott in Illinois. (Doc. 134 at 8.) Defendant argues that Judge Munley's declaratory judgment decision therefore misapplied the relevant law, because "the Court's holding cannot be reconciled with the plain language of § 1731(a)." (*Id.* at 10.) Defendant also argues that the Court misinterpreted the *Bamber* decision discussed above, (*id.* at 11-12), and made statements of the Pennsylvania legislature's intent as to section 1731 that contradict "basic principles of statutory construction," (*id.* at 12-14). Defendant therefore asks the Court to "revisit application of § 1731 to the policy at issue, and conclude that (1) the statute does not apply here, (2) Abbott's knowing and intentional rejection of UIM coverage was valid, and (3) Discover appropriately denied Douglas's request for UIM benefits." (*Id.* at 14.) Alternatively, Defendant argues that "[e]ven if this Court concludes that § 1731 applies, Discover properly denied Douglas' request for UIM benefits because he failed to present a *prima facie* entitlement to those benefits." (*Id.*) Defendant writes:

> Discovery in this case is now closed. The sole damages of which Douglas has produced any proof are medical bills totaling $8,021, all of which have

14

been covered by some combination of the first-party medical benefits provided by Discover and the $15,000 settlement that Douglas obtained from State Farm. He has never made a claim for lost wages, nor has he identified what, if any, amount he is seeking in noneconomic damages. Indeed, it would be impossible for Discover to pay any claim at this time because Douglas has never identified any amount of recovery he believes is outstanding.

(*Id.* at 14-15.)

While Judge Munley's Opinion the law of the case, it may be challenged by Defendant moving for reconsideration.[6] "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 2d 753, 755 (E.D. Pa. 1993) (*rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of

---

[6] Defendant did not file a separate Motion for Reconsideration, but its request for reconsideration is clearly laid out in its Brief in Support of Summary Judgment. (*See* Doc. 134 at 9-14.) The Court treats this request the same as it would an independent Motion for Reconsideration.

15

disagreement between the Court and the litigant." *Donegan v. Livingston*, 877 F. Supp. 2d

212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606

(M.D. Pa. 2002)).

When considered in light of these standards, Defendant does not present adequate

grounds for reconsideration.

First, the Court does not agree that its "holding cannot be reconciled with the plain

language of § 1731(a)." Section 1731(a) provides: "No motor vehicle liability insurance

policy shall be delivered or issued for delivery in this Commonwealth, with respect to any

motor vehicle registered or principally garaged in this Commonwealth, unless uninsured

motorist and underinsured motorist coverages are offered therein . . . ." 75 Pa. Cons. Stat.

Ann. § 1731(a). In interpreting that language, the Third Circuit has held that the term

"'delivery' of the policy is unambiguous and refers to that moment when Brisco [the insured]

received the policy from GEICO [the insurer] through the mail." *GEICO v. Benton*, 859 F.2d

1147, 1151 (3d Cir. 1988). It then stated that

> the meaning of "issued" has been subjected to prior scrutiny and in reference
> to an insurance policy, *has been found to be used in different senses. See
> generally* 44 C.J.S. Insurance § 262 *et seq.* On some occasions, "issued"
> *may* mean the preparation and signing of the instrument, as distinguished
> from its delivery to the insured. The term *may also* be construed to define the
> policy's delivery and acceptance whereby it becomes a binding mutual
> obligation. Agreement of the parties *may* determine the date of issuance of
> the policy.

*Id.* at 1152-53 (emphases added).

16

None of this language precludes the Court's prior decision, for several reasons. First, the insured in *Benton* was an individual insured, not an employer procuring an insurance policy specifically for use in multiple states. Thus, *Benton* addressed a situation where Brisco—as an individual insured—received a policy in one state, and therefore does not necessarily implicate our own situation, where a commercial fleet owner procures a policy from one central location with the express intention of covering drivers in other states. Thus, *Benton* need not be read to imply that "delivery" and "issuance" only occur in the jurisdiction in which the commercial fleet owner physically accepts them. Moreover, in the quoted text above, *Benton* merely gives a nonexhaustive list of the "different senses" in which the phrase "issued" "has been found to be used," *id.*, which makes Defendant's rigid interpretation of the case unwarranted. It is certainly reasonable to conclude that a policy intended to cover Pennsylvania drivers was "issued for delivery" in Pennsylvania, insofar as it was issued with the known and express intention of covering Pennsylvania drivers who primarily garage the insured cars in Pennsylvania. The fact that the administrative matters of procuring the policy occurred in other states may therefore be dismissed as mere happenstance that does not affect the import of the actual policy or change the meaning of the phrase "issued for delivery." All of this is consistent with *Benton*. Therefore, Judge Munley's resolution of these issues does not contain a "clear error of law" or a "manifest injustice."

17

Moreover, though Defendant disagrees with the Court's statement that "exclusion of the Discover policy from § 1731's scope would frustrate 'the Pennsylvania legislature's intent in drafting subsection § 1731(a)," (Doc. 134 at 12), that statement is also perfectly reasonable in light of the above considerations. As Judge Munley stated, "[w]ere the court to find that this policy is not within the purview of section 1731, based on the defendants' interpretation of issuance and delivery, we would allow corporations to evade Pennsylvania law based merely on a self-serving 'delivery' location," insofar as it would be easy to "deliver" a policy to an out-of-state location intended to exclusively cover Pennsylvania drivers. (Cf. Doc. 67 at 12.) This would easily defeat the purpose of the statute, which Judge Munley reasonably held could not be the legislature's intent. All of this is especially true in this case when, as Judge Munley noted, "[t]he policy is replete with references to Pennsylvania law and clearly evinces that it has been created to insure vehicles operating in Pennsylvania." (Id. at 12 (citing Doc. 55-1 at 47-50).)[7] Indeed, the very waiver form at issue—signed by an Abbott representative—is entitled "Pennsylvania Underinsured Motorist Coverage Selection/Rejection" and incorporates (albeit imperfectly, which gave rise to this lawsuit) Pennsylvania's own section 1731(c) language. (See Doc. 131-2 at 2.)

While Defendant may argue that the Court's interpretation of section 1731 violates other principles of statutory construction, (see Doc. 134 at 12-13), our only role on reconsideration is to determine if the Court's original ruling constituted a "clear error of law"

---

[7] These exhibits were resubmitted for the instant Motions for Summary Judgment as Doc. 131-2.

18

or a "manifest injustice." Because the relevant law allows for some ambiguity and because the Court's previous decision came to a reasonable resolution of that ambiguity which was not precluded by any existing law, we cannot find it either clearly erroneous or manifestly unjust.[8]

This does not end the matter. Judge Munley's Opinion only granted Plaintiffs' First Motion for Summary Judgment "with respect to Count I for a declaratory judgment that Discover's waiver is null and void." (Doc. 67 at 19; *cf. also* Pls.' Br. in Opp. to Def.' Mot. for Summ. J., Doc. 135-1, at 6 ("The only issue in the summary judgment motions on coverage was whether the rejection form was invalid.").) However, even when the summary judgment decision stands unaltered, questions remain as to how much coverage the Plaintiff is actually owed under the policy and whether the Defendant has some other basis to deny such coverage notwithstanding the fact that the waiver is void.

The Court cannot resolve such issues on summary judgment, because their resolution requires a determination of the disputed facts recounted above: namely, whether Plaintiff has damages not reflected in the medical bills that have already been paid and whether this question has implications for Defendant's duty to pay under the policy. These are factual questions which Judge Munley's summary judgment decision leaves unresolved.

---

[8] For these reasons, Defendant's remaining ground for reconsideration—that the Court misapplied *Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901 (Pa. Super. Ct. 1996), (*see* Doc. 134 at 11-12)—also fails. Defendant's *Bamber* argument is predicated on the proposition that the Court erred in interpreting section 1731's "delivery or issuance" language. (Doc. 134 at 12.) Because we have rejected this proposition, the final ground for reconsideration has been rendered moot.

As factual questions, they can only be resolved at trial or through another alternative dispute

resolution mechanism of the parties' choosing.

### b. Bad Faith (Count II)

Pennsylvania's bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the
insurer has acted in bad faith toward the insured, the court may take all of the
following actions:
> (1) Award interest on the amount of the claim from the date the claim
> was made by the insured in an amount equal to the prime rate of
> interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

"The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential*

*Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680, 688 (1994), *appeal denied*,

540 Pa. 641, 659 A.2d 560 (1995)." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230,

233 (3d Cir. 1997). *Terletsky* defined the term "bad faith" as follows:

In the insurance context, the term bad faith has acquired a particular
meaning:
> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded
> refusal to pay proceeds of a policy; it is not necessary that such refusal
> be fraudulent. For purposes of an action against an insurer for failure
> to pay a claim, such conduct imports a dishonest purpose and means
> a breach of a known duty (i.e., good faith and fair dealing), through
> some motive of self-interest or ill will; mere negligence or bad
> judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). "[T]o

recover under a claim of bad faith, the plaintiff must show that the defendant did not have a

reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* "In a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

As this Court noted in a recent decision, a dispute often arises in these cases as to precisely what information is relevant to determining a Defendant's alleged bad faith. *See generally Bodnar v. Nationwide Mut. Ins. Co.*, Civ. No. 12-1337, 2015 WL 5517922, at *12 (M.D. Pa. Sep. 15, 2015). The Eastern District of Pennsylvania held in *Williams v. Hartford Casualty Insurance Co.*, 83 F. Supp. 2d 567 (E.D. Pa. 2000), that the first prong of a bad faith claim, i.e., that the insurer lacked a reasonable basis to deny a claim, "is an objective one: that is if there is a reasonable basis for delaying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law be bad faith." *Williams*, 83 F. Supp. 2d at 574. The weight of opinion among the District Courts of Pennsylvania supports the proposition in *Williams*. *See Serino v. Prudential Ins. Co. of Am.*, 706 F. Supp. 2d 584, 592 (M.D. Pa. 2009); *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 521, 528 (M.D. Pa. 2007); *Livornese v. Med. Protective Co.*, 219 F. Supp. 2d 645, 648 (E.D. Pa. 2002), *rev'd on other grounds*, 136 Fed. App'x 473 (3d Cir. 2005); *Lites v. Trumbull Ins. Co.*, 2013 WL 5777156, at *5 (E.D. Pa. 2013); *MP III Holdings, Inc. v. Hartford Cas. Ins.*

*Co.*, 2011 WL 2604736, at *16 (E.D. Pa. 2011); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782, at *5 (M.D. Pa. 2010); *Robbins v. Metro. Life Ins. Co. of Conn.*, 2008 WL 5412087, at *7 (E.D. Pa. 2008); *Wedemeyer v. U.S. Life Ins. Co. in City of New York*, 2007 WL 710290, at *9 (E.D. Pa. 2007); *Meyer v. CUNA Mut. Group*, 2007 WL 2907276, at *12 (W.D. Pa. 2007); *Bell v. Allstate Ins. Co.*, 2005 WL 1353527, at *5 (E.D. Pa. 2005); *Burrell v. United Healthcare Ins. Co.*, 2001 WL 873221, at *3 (E.D. Pa. 2001). The decision is, however, not without objectors. *See Shannon v. New York Cent. Mut. Ins. Co.*, 2013 WL 6119204, at *3 (M.D. Pa. 2013) ("Given the remedial purpose underpinning the Bad Faith Statute, we are not persuaded that permitting an insurer to evade its statutory obligation due to some fortuitous fact to which it was oblivious is consistent with the legislature's intent.").

Nonetheless, it is not necessary to take a position on this issue to resolve the instant Motion. The summary judgment record contains ample evidence that Discover acted reasonably in handling Douglas's claim, even when we only consider the facts subjectively known to it.

First, Plaintiff is correct that the record shows that "Defendant knew since at least December 2007 that its rejection form was invalid under *Vaxmonsky*, but nonetheless continued to deny UIM coverage to Plaintiffs." (Pls.' Br. in Supp. of Mot. for Summ. J., Doc. 131-1, at 7.) But as discussed above, the Defendant had other justifications for denying coverage, even if the rejection form was invalid under *Vaxmonsky*. In other words,

invalidating the waiver form was a necessary but not a sufficient prerequisite to obtaining benefits; even if the waiver form is invalid, Plaintiff still needs to show that nothing else precludes him from coverage.

Second, even if Defendant had no alternative arguments to make, its conduct throughout litigation strongly indicates that it does not believe *Vaxmonsky* applies to this case, most notably due to the Defendant's thrice-asserted opinion that section 1731's "delivery" or "issuance" language precludes its application here. We know that Defendant subjectively relies on these legal arguments as a substantive justification to continue to deny benefits by raising it in its first set of summary judgment motions before Judge Munley, on its Motion for Amendment for an Interlocutory Appeal, and on the instant set of Motions which again seek reconsideration of the same Order (and even indicates an intention to appeal that Order if necessary, (*see* Reply Br. in Supp. of Def.'s Mot. for Summ. J., Doc. 137, at 12.)). It does not matter that these arguments have been unsuccessful in court so far. "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim," which requires some sort of dishonest purpose on the part of the Defendant. *Terletsky*, 649 A.2d at 688. The record contains no reason to believe that Defendant's legal arguments have been raised dishonestly. Instead, it simply appears that Defendants have hewn to good faith but

unavailing legal theories. This does not qualify as bad faith conduct under the standards set forth above.

## VII.  Conclusion

For the reasons stated above, Plaintiffs' Motion for Summary Judgment (Doc. 131) is **DENIED**. Defendant's Motion for Summary Judgment (Doc. 132) is **DENIED** as to Plaintiffs' UIM claim (Count I) and **GRANTED** as to Plaintiffs' Bad Faith claim (Count II). The matter will be scheduled for trial on the remaining aspects of Count I. A separate Order follows.

Robert D. Mariani
United States District Judge