## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HERMAN DOUGLAS and**<br>**CYNTHIA DOUGLAS,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **3:08-CV-01607** |
| | : | **(Judge Mariani)** |
| **DISCOVER PROPERTY & CASUALTY** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is Plaintiffs' Motion for Reconsideration of our Order granting summary judgment in favor of the Defendants on Plaintiffs' Bad Faith Claim or, in the Alternative, to Amend our Order to Certify It for an Interlocutory Appeal (Doc. 146). For the reasons that follow, the Court will deny the Motion.

### II.    Factual Background and Procedural History

The Court has discussed both the factual background and the complex procedural history of this case in detail before. (*See* Mem. Op., Sep. 29, 2015, Doc. 141, at 1-12.) That discussion is incorporated here. The Opinion that follows is written primarily for the benefit of the parties and therefore will assume knowledge of the relevant background of this case.

The instant Motion arises out of the parties' Cross Motions for Summary Judgment

(Docs. 131; 132), which both sought judgment on Plaintiffs' claims for Underinsured Motorist

(UIM) Coverage (Count I) and Bad Faith (Count II).

The Court first denied both Motions as they pertained to the UIM claim. (*See* Order,

Sep. 29, 2015, Doc. 142, at ¶¶ 1-2(a).) In doing so, we noted that a dispute of fact existed

"as to whether Plaintiff has been fully compensated for his injuries." (Doc. 141 at 6.) That is,

Herman Douglas

> received $15,000 from the tortfeasor's insurance company and $5,000 for
> first-party medical expenses from Discover. Defendant argues that "[t]he sole
> damages of which Douglas has produced any proof are medical bills totaling
> $8,021, all of which have been covered by some combination of the first-party
> medical benefits provided by Discover and the $15,000 settlement that
> Douglas obtained from State Farm." (Defs.' Br. in Supp. of Mot. for Summ. J.,
> Doc. 134, at 14-15.) In response, Plaintiff submitted a host of medical records
> to the summary judgment record. (*See generally* Exhs. to Pls.' Reply Br. in
> Supp. of Mot. for Summ. J., Doc. 140-1.) These include medical bills from
> various providers (much of which appears to be covered by another insurance
> carrier). The bills still render, at most, total charges below the $20,000 that
> Douglas received. (*See id.* at 15-17, 63, 70, 134, 150.)
>     However, as Plaintiffs point out, Douglas was also "left with reduced
> ability to exercise and enjoy activities with his children and relations with his
> spouse." (Pls.' Reply Br. in Supp. of Mot. for Summ. J., Doc. 140, at 7.) These
> damages are by their very nature difficult to quantify and would not be
> expected to be subject to documentary proof. To the extent documentary
> proof is necessary, however, these concerns were reflected in a report of Dr.
> William J. O'Brien, who wrote on June 20, 2006:
>> The patient was last seen in this office on June 20, 2006. At that time
>> he continued to complain of back pain. He noted that it was worse with
>> driving, specifically when he has to drive for work. The patient stated
>> that he cannot "work out" as he did prior to this accident. He noted that
>> he has difficulty with sexual relations due to his back pain. He also
>> complained of tingling in his hands and feet. He has difficulty carrying
>> his two year old child on his back anymore and this depresses him. He

2

> also has difficulty lifting his other children as he did previous to this accident.

(Doc. 140-1 at 26.) Dr. O'Brien concluded: "The patient is acutely aware that his abilities to function normally have been altered. He no longer can play with his children and [sic] has affected his work as well as relations with his spouse." (Id.)

(Id. at 6-7.)

The Court declined to reconsider its previous decision that the UIM coverage waiver that applied to Douglas's vehicle was legally null and void. (See id. at 14-19.) Nonetheless, it added that "even when [that] decision stands unaltered, questions remain as to how much coverage the Plaintiff is actually owed under the policy and whether the Defendant has some other basis to deny such coverage notwithstanding the fact that the waiver is void." (Id. at 19.) Thus, summary judgment was inappropriate because disputed facts exist as to "whether Plaintiff has damages not reflected in the medical bills that have already been paid and whether this question has implications for Defendant's duty to pay under the policy." (Id.)

The Court then went on to grant Defendant's Motion for Summary Judgment as to the Bad Faith claim. (Doc. 142 at ¶ 2(b).) After summarizing the law of bad-faith claims handling, the Court determined that "[t]he summary judgment record contains ample evidence that Discover acted reasonably in handling Douglas's claim." (Doc. 141 at 22.) It articulated two reasons in support of this. First, it noted that

> Plaintiff is correct that the record shows that "Defendant knew since at least December 2007 that its rejection form was invalid under Vaxmonsky, but nonetheless continued to deny UIM coverage to Plaintiffs." (Pls.' Br. in Supp.

3

of Mot. for Summ. J., Doc. 131-1, at 7.) But as discussed above, the Defendant had other justifications for denying coverage, even if the rejection form was invalid under *Vaxmonsky*. In other words, invalidating the waiver form was a necessary but not a sufficient prerequisite to obtaining benefits; even if the waiver form is invalid, Plaintiff still needs to show that nothing else precludes him from coverage.

(*Id.* at 22-23.) Second, it noted that

> even if Defendant had no alternative arguments to make, its conduct throughout litigation strongly indicates that it does not believe *Vaxmonsky* applies to this case, most notably due to the Defendant's thrice-asserted opinion that section 1731's "delivery" or "issuance" language precludes its application here. We know that Defendant subjectively relies on these legal arguments as a substantive justification to continue to deny benefits by raising it in its first set of summary judgment motions before Judge Munley, on its Motion for Amendment for an Interlocutory Appeal, and on the instant set of Motions which again seek reconsideration of the same Order (and even indicates an intention to appeal that Order if necessary, (*see* Reply Br. in Supp. of Def.'s Mot. for Summ. J., Doc. 137, at 12.)). It does not matter that these arguments have been unsuccessful in court so far. "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim," which requires some sort of dishonest purpose on the part of the Defendant. *Terletsky*, 649 A.2d at 688. The record contains no reason to believe that Defendant's legal arguments have been raised dishonestly. Instead, it simply appears that Defendants have hewn to good faith but unavailing legal theories. This does not qualify as bad faith conduct under the standards set forth above.

(*Id.* at 23-24.)

Plaintiffs then filed the instant Motion for Reconsideration. The Motion challenges the

Court's bad faith decision only, on the basis that our two grounds for that decision were

legally erroneous. No one has challenged the UIM decision.

4

## III.   Analysis

### a.  Motion for Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or

fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,

909 (3d Cir. 1985). A motion for reconsideration "must rely on one of three grounds: (1)

an intervening change in controlling law; (2) the availability of new evidence; or (3) the

need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d

121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

Moreover, "motions for reconsideration should not be used to put forward arguments

which the movant . . . could have made but neglected to make before judgment." *United*

*States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and

alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 2d 753, 755 (E.D. Pa.

1993) (*rev'd in part and aff'd in part on other grounds,* 57 F.3d 270 (3d Cir. 1995)). Nor

should they "be used as a means to reargue matters already argued and disposed of or as

an attempt to relitigate a point of disagreement between the Court and the litigant."

*Donegan v. Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v.*

*Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).

Though they do not explicitly say so, it appears that Plaintiffs are relying on some

aspect of the third basis for reconsideration: that the Court's decision contained a clear error

of law or a manifest injustice. Thus, Plaintiffs first argue that

5

[t]he first reason set forth by the Court states that "Defendant had other justifications for denying coverage," (Opinion at 22), but identifies no such justifications, and instead refers to material "discussed above." All of the material "above" in the opinion concerns the claim for UIM benefits, and while that material identifies fact issues as to the *value* of Plaintiff's damages and whether UIM benefits are thus owed, it mentions *no* issue whatsoever as to the existence of UIM *coverage*.

(Pls.' Mem. in Supp. of Recons., Doc. 146, at 15.)

This cavil over terminology has no substantive impact on the Court's Opinion. As our Opinion described, "'bad faith' on [the] part of [an] insurer is any frivolous or unfounded refusal to pay [the] proceeds of a policy . . . ." (Doc. 141 at 20 (quoting *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).) The Opinion had already discussed in preceding sections how issues of fact existed as to whether Plaintiffs had already been fully compensated for Herman Douglas's injuries. Therefore, because the entire summary judgment record demonstrated that Plaintiffs are not necessarily entitled to any money for this insurance claim beyond what they already received from third parties, then by definition it cannot be "frivolous or unfounded" for the Defendant to refrain from paying their claim. This is true regardless of whether we refer to the Plaintiffs' entitlement to compensation under the policy in terms of "coverage" or "value;" for all practical purposes, denying coverage is equivalent to refusing to pay a claim for any dollar value higher than what the Plaintiffs had already received from the third party tortfeasor. Whether the denial is characterized as one of coverage or one of insufficient value to trigger coverage, Defendant's refusal to pay insurance proceeds to the Plaintiffs—

6

whatever its ultimate merits—could not as a matter of law amount to bad faith. Thus, the Court was correct to conclude that material previously discussed in its Opinion precluded the bad faith claim.

This holding by itself is enough to sustain our decision granting summary judgment. However, for the sake of completeness, the Court will address Plaintiffs' second argument. There, Plaintiffs argue that "[t]he second reason set forth by the Court states that Defendant's 'conduct throughout litigation strongly indicates that it does not believe *Vaxmonsky* applies to this case.'" (Doc. 146 at 16 (quoting Doc. 141 at 23).) But, they continue, "[i]f this were a defense to a bad faith claim, an insurer could avoid bad faith liability simply by denying such liability." (*Id.*) Instead, we must look not to what the Defendant happened to believe, but only to whether its beliefs were "reasonable." (*See id.* at 16-17.) Plaintiffs then argue that Defendant acted unreasonably by relying on interpretations of *Vaxmonsky* that had been rejected twice by this Court at the time of our summary judgment decision, and, moreover, that even these interpretations should not be considered as probative of the absence of bad faith because they were only arguments of counsel. (*See id.* at 17-18.) To consider them on summary judgment would, according to the Plaintiffs, allow Defendant to assert an advice of counsel defense that has never been pled and therefore should open up an additional period of discovery "as to whether Defendant actually based its denial of UIM coverage on any of the arguments that its counsel made in this litigation." (*See id.* at 18-19.)

This argument begins from a correct premise but veers off to a faulty conclusion. If this Court had only held that Defendant's subjective belief that its actions were reasonable is by itself sufficient to defeat a bad faith claim, then the Court would have erred. However, the Court made this statement in the context of Plaintiffs' argument, mentioned on page 22 of our Opinion, that Defendant engaged in bad faith because it supposedly "knew since at least December 2007 that its rejection form was invalid under *Vaxmonsky*, but nonetheless continued to deny UIM coverage to Plaintiffs." (Pls.' Br. in Supp. of Mot. for Summ. J., Doc. 131-1, at 7.) The Court went on to reject this argument because, even though Defendant knew about *Vaxmonsky*'s holding since December 2007, it continuously made reasonable, good faith arguments in the intervening time that *Vaxmonsky* did not apply to the facts of this case. (*See* Doc. 141 at 23.) The Opinion summarized the many points throughout this litigation where Defendant has raised that very argument before this Court. (*See id.*) While these arguments were unsuccessful, that is not by itself evidence of bad faith. The Pennsylvania Superior Court has noted that "in the absence of a dishonest purpose or ill-will, it is not bad faith to take a stand with a reasonable basis or to 'aggressively investigate and protect [one's] interests in the normal course of litigation." *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004). Plaintiffs essentially ask the Court to infer bad faith because Defendant did not surrender this lawsuit and pay their claim when judicial decisions began to turn against it, notwithstanding the fact that Defendant had other avenues to challenge those decisions by reconsideration and appeal. But Defendant's

8

decision to litigate a reasonable but unpersuasive legal position cannot amount to bad faith under the existing case law.

The Court also disagrees with Plaintiffs' claim that we erred by "assum[ing] that bad faith requires some sort of dishonest purpose on the part of the Defendant." (Doc. 146 at 17.) For one reason, our statement was not an "assumption" but rather came as a direct quote from the Pennsylvania Superior Court's *Terletsky* decision. (*See* Doc. 141 at 20, 23.) The Pennsylvania Superior Court subsequently clarified that decision to hold that "the 'motive of self-interest or ill will' level of culpability is not a third element required for a finding of bad faith, but it is probative of the second element identified in *Terletsky*, i.e., 'the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Greene v. United Servs. Auto Ass'n*, 936 A.2d 1178, 1191 (Pa. Super. Ct. 2007) (quoting *Terletsky*, 649 A.2d at 688). But our statement to which Plaintiffs object reads as follows:

> "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim," which requires some sort of dishonest purpose on the part of the Defendant. *Terletsky*, 649 A.2d at 688.

(Doc. 141 at 23.) Clearly, the Court was discussing Defendant's alleged "dishonesty" in the context of determining whether the two *Terletsky* prongs were met, which is exactly what *Greene* held that the law requires. The Pennsylvania Superior Court reiterated these same principles this very year when it stated that "[t]o support a finding of bad faith, the insurer's conduct must be such as to '*import a dishonest purpose*.' In other words, the plaintiff must

9

show that the insurer breached its duty of good faith through some motive of self-interest or ill-will." *Mohney v. Am. Gen. Life Ins. Co.*, 116 A.3d 1123, 1131 (Pa. Super. Ct. 2015) (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006)) (emphasis added). Thus, our discussion is squarely in accordance with Pennsylvania precedent.

Nor does reliance on these arguments place advice of counsel at issue, as Plaintiffs claim. (*See* Doc. 146 at 18.) Indeed, Defendant's Answer explicitly denies that *Vaxmonsky* renders the waiver form void, (*see* Answer, Doc. 23, at ¶¶ 14-28), and raises as its first three Affirmative Defenses the same types of arguments that Defendant has continually asserted to argue the same, (*see id.* at pp. 10-11). Thus, our Opinion only considered defenses that Defendant raised in its Answer and asserted numerous times in Court; it is the Plaintiffs who recharacterized the defenses as "advice of counsel." Obviously, Defendant cannot be precluded from relying on properly-pled defenses.

### b. Motion for an Interlocutory Appeal

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b). This statute "imposes three criteria for the district court's exercise of discretion to grant a § 1292(b) certificate." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754

(3d Cir. 1974). That is, the "order must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination of the litigation.'" *Id.* The district court may amend an order that did not originally include the necessary 1292(b) statement to allow for interlocutory appeal. *See* Fed. R. App. P. 5(a)(3).

The dispositive factor here is the second one: whether a substantial ground for difference of opinion exists as to the Court's decision. A party "cannot establish a substantial ground for difference of opinion simply by expressing its disagreement with the . . . Court's decision. Instead, 'a substantial ground for difference of opinion "must arise out of genuine doubt as to the correct legal standard."'" *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 386 (M.D. Pa. 2007) (quoting *In re Powell*, Civ. No. 06-4085, 2006 WL 3208843, at *2 (E.D. Pa. Nov. 3, 2006)). Plaintiffs purport to list several issues where substantial grounds for difference of opinion exist. (Doc. 146 at 22.) However, these are all the same issues raised in their Motion for Reconsideration, which we have already rejected as various misstatements of the holdings in our Opinion. Because all of Plaintiffs' arguments on these issues have been found meritless, we cannot now find that they present a substantial ground for difference of opinion.

Moreover, even if hypothetically the Third Circuit sided with the Plaintiffs on the issues, this would not come about due to any "genuine doubt as to the correct legal standard," but rather would only show that the Court erred in applying well-established law.

The standards of bad faith insurance law in Pennsylvania are clear and well-developed. As the Defendant notes, Plaintiffs "have not identified any conflicting judicial opinions addressing these issues." (Def.'s Br. in Opp. to Mot. for Recons., Doc. 147, at 18.) Rather, the only issues in this case concern how those clear standards apply to the facts at hand. While it possible that the Third Circuit could disagree with our own application of these standards, such a disagreement does not reflect a "substantial ground for difference of opinion" as that phrase has been interpreted by the case law cited above.

Next, "[a]n order involves a controlling question of law 'if, on appeal, a determination that the decision contained error would lead to reversal.'" *Patrick*, 366 B.R. at 385 (quoting *In re Sandenhill*, 304 B.R. 692, 694 (E.D. Pa. 2004)). It is possible that, if the Third Circuit agreed with some or all of Plaintiffs' positions, this would lead to reversal. It is also possible that appealing now would materially advance the ultimate termination of this litigation, as it could avoid a situation where the Circuit reverses and remands this case after a full trial on Plaintiffs' UIM claim (however unlikely that may be). Nonetheless, because no substantial grounds for difference of opinion exist both as to the correctness of the our summary judgment opinion and the clarity of the law we applied, the fact that factors (1) and (3) might favor the Plaintiff is nondispositive. Interlocutory appeal is still unwarranted.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Reconsideration or, in the Alternative, for an Interlocutory Appeal (Doc. 146) is **DENIED**. A separate Order follows.

12

Robert D. Mariani
United States District Judge